IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


CAMELLIA THERAPEUTIC FOSTER )
AGENCY, LLC REPRESENTED BY )
JOSEPH APPIAH, CHAIRMAN )
THERAPEUTIC FOSTER CHILDREN, )
FOSTER PARENTS AND STAFF )
  )
    Plaintiffs, )
  )
V. )     **CASE NO. 2:06 CV 735-MHT**
  )
GOVERNOR BOB RILEY,  DEPT OF )
HUMAN RESOURCES COMMISSIONER )
PAGE WALLEY, AND SUSAN WARD )
  )
    Defendants. )

## MOTION TO DISMISS OR FOR SUMMARY JUDGMENT BY DEFENDANT ALABAMA DEPARTMENT OF HUMAN RESOURCES

      COMES NOW Defendant Alabama Department of Human Resources (hereafter referred to as "DHR"), by and through its undersigned counsel, and move this Honorable Court to dismiss Plaintiff's Amended Complaint or, in the alternative, to grant summary judgment to Defendant. Defendant incorporates by reference Evidentiary Materials In Support Of DHR Defendants' Motion for Summary Judgment filed contemporaneously herewith.  Defendant avers that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law.  As grounds therefore, Defendant shows unto this Court as follows:

    I.  CLAIMS MADE AGAINST DEFENDANT ALABAMA DHR ARE BARRED BY THE ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY

    II.  PLAINTIFF FAILS TO STATE A CAUSE OF ACTION

III.   PLAINTIFF HAS FAILED TO STATE A TITLE VI CAUSE OF ACTION

IV.   SUPPLENTAL JURISDICTION SHOULD NOT BE EXERCISED IN THIS CASE BECAUSE NO STATE LAW CAUSE OF ACTION EXISTS

V.   *EX PARTE YOUNG* DECLARATORY RELIEF IS UNAVAILABLE BECAUSE THE REQUIREMENT HAVE NOT BEEN MET

VI.   PLAINTIFF FAILS TO ALLEGE A PROCEDURAL DUE PROCESS CLAIM

VII.   PUNITIVE DAMAGES ARE NOT AVAILABLE AGAINST DHR

VIII.   PLAINTIFF CLAIMS FAIL ON MCDONNELL DOUGLAS ANALYSIS

## COMPLAINT

According to its Amended Complaint, Plaintiff, Camellia Therapeutic Foster Agency (hereinafter "Camellia") brings this action against the Defendant DHR alleging that the agency engaged in racism/discrimination against Plaintiff in violation if its rights under Title VI of the Civil Rights Act by not awarding Camellia a contract as part of a DHR Request for Proposal for Therapeutic Foster Care.  In February 2005, DHR issued a Request for Proposal asking vendors to propose offers for contracts to provide homes for DHR foster children who needed therapeutic care.  Camellia alleges that it submitted a proposal, but that DHR discriminated against it by not awarding it a contract.  Plaintiff alleges three counts: 1( race discrimination and procedural due process ( i.e. right to a right), 2) interference with an existing lawful business and, 3) interference with contract relations.  Camellia seeks injunctive relief, punitive damages, and specified compensatory damages.

## RULE 12(b)(6) AND RULE 56(c) STANDARDS

Under Rule 12(b)(6), FED.R.CIV.P., dismissal of the complaint for failure to state a cause of action is appropriate when no construction of the factual allegations of the complaint

will support the cause of action. *Marshall County Board of Education v. Marshall County Gas District*, 992 F.2d 1171, 1174 (11th Cir. 1993). The Court may dismiss the complaint only if it is clear that no relief could be granted under any set of facts in support of its claims. *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986). It has been held that the consideration of "matters outside the pleading[s]" under Rule 12 triggers the notice provision of Rule 56(c). *McBride v. Sharpe*, 25 F.3d 962, 968 (11th Cir. 1994). Moreover, when a *pro se* litigant is involved, Rule 56(c) has been interpreted to require that the district court specially inform the litigant (1) of the need to file affidavits or other responsive materials and (2) of the consequences of default. *See United States v. One Colt Python .357 Cal. Revolver*, 845 F.2d 287, 289 (11th Cir. 1988); *Farred v. Hicks*, 915 F.2d 1530, 1534 (11th Cir. 1990).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); see *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). After a properly made motion has been properly responded to, the Court must grant summary judgment if there is

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

I.    **CLAIMS MADE AGAINST DEFENDANT ALABAMA DHR ARE BARRED BY THE ELEVENTH AMENDMENT AND SOVEREIGN IMMUNITY.**

The Eleventh Amendment to the Constitution of the United States provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of Foreign State." U.S. Const. Am. XI. The Amendment also applies to suites in federal court against a state by its own citizens. See *Hans v. Louisiana*, 134 U.S. 1, 18-19, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The protection provided to states by the Eleventh Amendment has been extended to protect state entities, see *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("suit in which the State or one of its agencies or departments is named as defendant is proscribed by the Eleventh Amendment...regardless of the relief sought"), and state officials in their official capacities, see *Kentucky v Graham,* 473 U.S. 159, 166-167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Essentially, the Eleventh Amendment creates a sovereign immunity for suit in federal court which the states enjoy unless it has been surrendered. See *Idaho v Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 266-267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) "[A]n assertion of Eleventh Amendment immunity must be

resolved before a court may address the merits of the underlying claims." *Seaborn v State of Florida, Department of Corrections,* 143 F.3d 1405, 1407 (11th Cir. 1998).

The Eleventh Amendment to the Constitution of the United States is a jurisdictional bar to a suit against an unconsenting state in federal court. *Hans, supra; Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Generally, the Eleventh Amendment is a complete bar to lawsuits brought in federal court against a state or state agency by Individuals. *Halderman,* 465 U.S. at 98-100, 104 S.Ct. at 906-908 (Eleventh Amendment bar to suit against state and state agencies applies "regardless of the nature of the relief sought"). See *Edelman v Jordan,* 415 U.S. 651, 662-663, 94 S.Ct. 1347, 1355, 1356, 39 L.Ed.2d 662 (1974). Additionally, in *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), the United States Supreme Court held that actions for injunctive relief against a state or its instrumentalilities were not an exception to the Eleventh Amendment bar.

Plaintiff seeks money damages, declaratory judgment, and injunctive relief against Defendant State of Alabama DHR. The federal courts have also held that he Eleventh Amendment prohibits actions for injunctive relief against state agencies by its citizens. *Wright v Butts,* 953 F. Supp. 1352, 1358 (M.D. Ala. 1996) (Eleventh Amendment bars injunctive relief against Department of Transportation); see also *Stevens v Gay,* 864 F.2d 113 (11th Cir. 1989) (Eleventh Amendment bars injunctive relief against Board of Corrections); *United States v State of Alabama,* 791 F.2d 1450 (11th Cir. 1986) (Eleventh Amendment bars injunctive relief against State Board of Education).

To ascertain whether an entity is an arm of the state, the Court must examine state law. *Brown v East Central Health District,* 752 F.2d 615, 617 (11th Cir. 1985). By statute,

the state and county Department of Human Resources have sovereign immunity. Ala. Code § 38-2-8 (1975)' *Mitchell v Davis,* 598 So.2d 801 (Ala. 1992) ("DHR and the JCDHR [Jefferson County DHR], as State agencies, can assert the defense of absolute immunity from suit." (Parenthetical information added)); see also *Ross v State of Alabama,* 893 F. Supp. 1545 (M.D. Ala. 1995) (holding that by statute the "Houston County DHR is a division of the State Department of Human Resources and operates under its direction. Thus, the Court concludes that the Houston County DHR is a state agency for purposes of the Eleventh Amendment."). Defendant State of Alabama DHR is therefore entitled to sovereign immunity in this case dismissal from all action.

Defendant Alabama DHR is absolutely immune from suit under State law for State claims raised by Plaintiff as well.. In *Phillips v Thomas*, 555 So.2d 81, 83 (Ala. 1989), the Alabama Supreme Court stated as follows:

> Article I, §14, Alabama Constitution of 1901, is the basis for sovereign immunity in this State, and that section provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Under this provision, the State and its agencies have absolute immunity from suit in any court. *Barnes [v. Dale],* 530 So.2d [770] at 781 [(Ala. 1978)]; *Hickman v Dothan City Board of Education,* 421 So.2d 1257, 1258 (Ala. 1982); *Gill [v. Sewell],* 421 So.2d [1196] at 1198 [(Ala. 1978)]; and *Milton [v. Espey]* 356 So.2d [1201] at 1202 [(Ala. 1978)].

(Parenthetical information added.) "The State's immunity bars suits for relief by way of mandamus or *injunction*, no less than suits for any other remedy." *Taylor v Troy State University,* 437 So.2d 472, 474 (Ala. 1983) (emphasis added). In *Mitchell v Davis,* 598 So.2d 801, 806 (Ala. 1992), the Alabama Supreme Court held that "DHR [the Alabama State Department of Human Resources] and the JCDHR [Jefferson County Department of Human Resources], as State agencies, can assert the defense of *absolute immunity* from suite."

(Parenthetical information and emphasis added.).  In Camellia's Deposition, Dr. Appiah

stated that DHR is the only Defendant being sued:

```
2              Q.>I understand what you are saying, but
3        the document that your lawyer filed withdraws the
4        original complaint and gives notice that the
5        Amended Complaint is going to be filed.  On the
6        Amended Complaint, which is Exhibit 3, the only
7        listed defendant is the Alabama Department of Human
8        Resources; isn't that correct?
9              A.>I think so.
10             Q.>There is your copy again.
11             A.>I have one in my hand.  The court has
12       not dismissed – according to the court, the
13       dismissal was removed.  They threw out the
14       complaint, so we can come back later.  That is what
15       my understand is.
16             Q.>So look on Page 2 of that Amended
17       Complaint, Parties.  On Paragraph No. 7 it lists
18       the defendant.  Who is the defendant listed there?
19       Do you see Paragraph No. 7?
20             A.>Alabama Department of Human
21       Resources.
22             Q.>Is any other defendant listed?
23             A.>No.
```

Camellia's Deposition page 150, Exhibit 7 Evidentiary Materials in Support of Motion.

Since DHR is immune from suit, this case should be dismissed or summary judgment granted

to Defendant DHR.

## II.    PLAINTIFF FAILS TO STATE A CAUSE OF ACTION

Plaintiff has not alleged that Defendant DHR engaged in intentionally discrimination

based upon race in any of its claims.  Plaintiff must allege that Defendants acted with the

intent to discriminate against him.  See, *McCleskey v.* Kemp, 481 U.S. 279, 292, 107 S.Ct.

1756, 1767, 95 L.Ed.2d 262 (1987); *E & T Realty v.* Strickland, 830 F.2d 1107, 1112 and n.5

(11th Cir. 1987), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988).  It is

insufficient for Plaintiff to merely put forth a personal belief that discriminatory intent was

present.  See, *Wilson v. Seiter*, 893 F.2d 1336, 1990 WL 1125, at *3 (6th Cir. 1990).  A Plaintiff must allege facts establishing that the defendant intended to discriminate on the basis of race and that the discrimination concerned one or more of the activities enumerated in the statute.  *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000).

Plaintiff's Amended Complaint seeks to raise only two federal claims against one Defendant, the Alabama Department of Human Resources (DHR).  First, a Title VI race discrimination claim.  Second, a 14th Amendment procedural due process claim.  In addition, Plaintiff seeks to raise two state claims against DHR.  First an interference with lawful business claim.  Second an interference with contract relations claim due process claim.  All federal and state claims are without merit, as will be further determined in later section of this motion.

In *C & J Associates Pest Control v. Hornsby*, 2006 WL 3832819 (M.D. Ala. December 28, 2006), *C & J* was the unsuccessful bidder on State of Alabama contracts for termite treatment projects at the Alabama Department of Transportation (ADOT) and the Alabama Department of Corrections.  *C & J* was wholly owned by Duncan, a black resident of Montgomery County, Alabama who had operated pest control services for twenty-five years.  Among other things *C & J* argued that, state officials, discriminated against him based on race in violation of the 14th Amendment.  The court granted summary judgment to Defendants holding as follows:

> Plaintiff has failed altogether to demonstrate against the ADOT
> defendants any racial discrimination claim violative of the
> Fourteenth Amendment and any valid state law claim premised
> on Alabama bid laws or administrative procedures.

*C & J Associates Pest Control*, 2006 WL 3832819 at page 9.  In so holding, the court stated that establishing discriminatory intent requires more than just losing out on a contract bid.

"Evidence which merely indicated disparity of treatment or erroneous or even arbitrary administration of state powers, rather than against instances of purposeful or individual discrimination, is insufficient to show discriminatory intent. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)" *C & J Associates Pest Control*, 2006 WL 3832819 at page 7.

### III.     PLAINTIFF HAS FAILED TO STATE A TITLE VI CAUSE OF ACTION.

Though Title VI is silent as to remedies, "[i]t is…beyond dispute that private individuals may sue to enforce" it. *Alexander v. Sandoval*, 532 U.S. 275, 280, 121 S.Ct. 1511, 1516, 149 L.Ed.2d. 517 (2001) *see also Bossier Parish Sch. Bd. v. Lemon*, 370 F.2d 847, 851 (5th Cir. 1967) (holding that Title VI provides an implied private right of action**).** The courts that have considered the question, however, have generally concluded that individuals may not be held liable for violations of Title VI because it prohibits discrimination only by recipients of federal funding. The text of Title VI clearly suggests this: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Supreme Court has concluded that "Congress limited the scope of § 504 [of the Rehabilitation Act, a related nondiscrimination provision with language virtually identical to that of Title VI,] to those who actually 'receive' federal financial assistance," *United States Dep't of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 605, 106 S.Ct. 2705, 2711, 91 L.Ed.2d 494 (1986) and the statute "does not extend as far as those who benefit from it." *Id*. at 607, 106 S.Ct. at 2712.

In *Sandoval*, the Supreme Court stated that "three aspects of Title VI must be taken as a given." *Sandoval*, 532 U.S. at 279, 121 S.Ct. 1511. "First, private individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages." *Id*. Second, "§ 601

9

prohibits only intentional discrimination." *Id.* at 280, 121 S.Ct. 1511. Third, the Supreme Court assumed that "regulations promulgated under § 602 of Title VI may validly proscribe activities that have a disparate impact on the racial groups, even though such activities are permissible under § 601." *Id.* at 281, 121 S.Ct. 1511. The Supreme Court then examined § 602 in great detail and stated that "Title VI [does not] display an intent to create a freestanding private right of action to enforce regulations promulgated under § 602[; therefore, the Court held] that no such right of action exists." *Id.* at 293, 121 S.Ct. 1511 (parenthetical information in the original).

The Supreme Court has made it clear that "the reach of Title VI's protection extends no further than the Fourteenth Amendment." *United States v. Fordice*, 505 U.S. 717. 732 n. 7. 112 S.Ct. 2727, 2737, 120 L.Ed.2d 575 (1992) (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287, 98 S.Ct. 2733 2746, 57 L.Ed.2d 750 (1978)). In order to state a claim upon which relief can be granted under either § 601 of Title VI, a party must allege that he or she was the target of purposeful, invidious discrimination. *See Alexander v. Sandoval*, 532 U.S. 275, 285, 121 S.Ct. 1511, 1519, 149 L.Ed.2d 517 (2001) (rejecting any application of § 601 of Title VI that extends beyond intentional discrimination); *see also South Camden Citizens in Action v. New Jersey Dep't of Environmental Protection*, 254 F.Supp.2d 486 (D.N.J. 2003). Plaintiff has not alleged that Camellia was the target of purposeful invidious discrimination.

## IV.   SUPPLEMENTAL JURISDICTION SHOULD NOT BE EXERCISED IN THIS CASE BECAUSE NO STATE LAW CAUSE OF ACTION EXISTS.

Counts II and III of the Amended Complaint seeks to allege Alabama statutory claims for intentional interference with lawful business and contract relations. If this Court

10

dismisses all Plaintiff's federal claims, it must inquire as to "whether a jurisdictional basis exists to support Plaintiff's state law claims in federal court." *Baggett v. First National Bank of Gainsville*, 117 F.3d 1342, 1352 (11th Cir. 1997). The appropriate court inquiry is as follows:

> First, the Court must decide whether it has the power to hear the state law claims. Second, if the Court does have the power to hear the state claims, the Court must decide whether, in its discretion, it will retain jurisdiction over the state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26, 86 S.Ct. 1130, 1138-1139, 16 L.Ed.2d 218 (1966).

*Baggett*, 117 F.3d at 1352.

Under 28 U.S.C. §1367(c), a court may dismiss any state law claims where the Court has dismissed all the claims over which it had original jurisdiction. Even where §1367(c) applies, the Court is permitted to apply considerations of judicial economy, convenience, fairness, and comity in deciding whether to exercise supplemental jurisdiction in its discretion. *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994). However, where all federal claims are dismissed prior to trial, these considerations favor the Court's declining to exercise federal jurisdiction over the state claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (dismissal of state claims strongly encouraged where federal claims are dismissed prior to trial); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 619 n.7, 98 L.Ed.2d 720 (1988) ("When federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal courts should decline the exercise of jurisdiction by dismissing the case without prejudice.")

In any case, although Alabama does recognized a cause of action for interference with business or contract relations, Plaintiff fails to state causes of action for such claims. The elements of the causes of action are as follows:

> In *Gross v. Lowder Realty Better Homes & Gardens*, 494 So.2d 590 (Ala. 1986), this court announced a new rule that was broad enough to encompass both interference with business relations and interference with contractual relations. The tort of intentional interference with business or contractual relations requires:
>
> "(1)  The existence of a contract or business relation;
>
> "(2)   Defendant's knowledge of the contract or business relation;
>
> "(3)  Intentional interference by the defendant with the contract or business relation;
>
> "(4)  Absence of justification for the defendant's interference; and
>
> "(5)   Damage to the plaintiff as a result of defendant's interference.

*Folmar & Associates LLP v. Holberg*, 776 So.2d 112, 115 (Ala. 2000).

Plaintiff does not state a claim stating it was attempting to get a contract for a new year. Furthermore, contracts were awarded under a Request for Proposal (RFP) scoring process constituting justification for Defendant's decision not to award a contract to Plaintiff. That mere expectancy of acquiring a contract is insufficient to state a claim. This is supported by holding of the Alabama courts in related matters. "(T)he provision for letting the contract to the lowest responsible bidder is for the benefit of the public and *does not confer on a bidder any right enforceable at law or in equity….*" *Tectonics, Inc. v. Castle Const. Co. Inc.*, 496 So.2d 704, 705-06 (Ala. 1986) (quoting *Townsend v. McCall*, 262 Ala. 554, 558, 80 So.2d 262, 265 (1955) (emphasis added in Tectonics). An unsuccessful bidder may not sue for monetary damages, *Jenkins, Weber & Associates v. Hewitt*, 565 So.2d 616,

617 (Ala. 1990), or "recover bid preparation expenses." *Crest Const. Corp. v Shelby County Bd of Educ.*, 612 So.2d 425, 431-32 Ala. 1992).  More to the point, an unsuccessful bidder has no "right or expectancy to *insist upon the award of a contract*."  *Jenkins, Weber & Associates*, 565 So.2d at 618 (quoting with approval *Urban Sanitation Corp. v. City of Pell City*, 662 F. Supp. 1041, 1044 (N.D. Ala. 1986) (emphasis added)).

**V.    *EX PARTE YOUNG* DECLARATORY RELIEF IS UNAVAILABLE BECAUSE THE REQUIREMENTS HAVE NOT BEEN MET**

Defendant further avers that the Amended Complaint does not meet the requirements for an *Ex parte Young* claim.  The Eleventh Circuit Court of Appeals has held that the applicability of an *Ex parte Young* claim depends on three considerations:

> [F]irst, does the plaintiff seek prospective or retrospective relief; second, is the violation ongoing and continuous; and finally, would equitable relief " 'implicate special sovereignty interests.' " *Id.* at 1337 (quoting *Coeur d'Alene*, 521 U.S. at 281, 117 S.Ct. 2028).

*Sandoval v. Hagan*, 197 F.3d 484, 500 (11th Cir. 1999).

The Amended Complaint in this case demands only relief for past wrongs. "[C]ompensatory or deterrence interests are not sufficient to overcome the dictates of the Eleventh Amendment."  *Papasan v. Allain*, 478 U.S. 265, 277-278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).  Furthermore, the Amended Complaint in this case does not seek to address an "ongoing and continuing violation of federal law."  The Eleventh Circuit Court of Appeals has held:

> …The ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature, *i.e.*, designed to prevent injury that will occur in the future, and cases where relief is retrospective.

*Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999).

> ...*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past.

*Papasan*, 478 U.S. at 277-278.

## VI.    PLAINTIFF FAILS TO ALLEGE A PROCEDURAL DUE PROCESS CLAIM

To succeed on a procedural due process claim, a plaintiff must establish "(1) a constitutionally protected interest in life, liberty, or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson County v. Cherry*, 980 F.2d 1354, 1357 (11th Cir. 1992); see also *Zipperer v. City of Fort Myers*, 41 F.3d 619, 623 (11th Cir. 1995). "Failure to establish any one of these elements is fatal to [the] due process claim." *Bank of Jackson County*, 980 F.2d at 1357.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law…." U.S. CONST., Amend. 14, § 1. Property interests are not created by the Constitution but by existing rules or understandings which stem from an independent source, such as state law, and arise only where the Plaintiff demonstrates a "legitimate claim of entitlement." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). State statutes, rules, regulations, and mutually explicit understandings can create property interests. See *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077-2078, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972). Whether these sources create a property interest must be decided by reference to state law. *Bishop*, 426 U.S. at 344, 96 S.Ct. at 2077.

14

As has been mentioned earlier, the Alabama courts have already held that in the area of the award of public contracts absent a statute providing for it that there is no "right or expectancy to insist on the award of a contract." *Jenkins, Weber & Associates v. Hewitt*, 565 So.2d at 618, quoting with approval *Urban Sanitation Corp. v. City of Pell City*, 662 F. Supp. 1041, 1044 (N.D. Ala. 1986). The Request for Proposal (RFP) process utilized by Defendant DHR for the award of multiple contracts is substantially similar to competitive bid process in those case for the award of a single contract. Submitting a response to an RFP is substantially similar to submitting a bid in response to a competitive bid announcement. In both situations, the vendor has no "right or expectancy" to the contract, no protected right under State law, and therefore no federally protected property interest guardable by procedural due process. Furthermore, despite not being awarded a contact, Camellia's DHR issued license remains unaffected.

    1    to June 11, 2003; and I have a license from March
    2    19, 2003 to March 19, 2005: a license from March
    3    19, 2005 to March 19, 2007; and a license from
    4    March 19, 2007 to March 19, 2009; is that correct?
    5        A.>Yes.
    6        Q.>So you are still currently licensed?
    7        A.>Yes, sir. I called Susan Ward. I am
    8    fully licensed. So thank God I am fully licensed.

Camellia's Deposition page 100, Exhibit 7 Evidentiary Materials in Support of Motion.

    8        Q>It is your claim that you have
    9    Property rights that are protected by the
    10   Constitution?
    11       A.>This was written by a lawyer.
    12       Q.>What rights are you talking about,
    13   what property interest rights are you talking
    14   about?
    15       A.>I have a check with the attorneys on
    16   this one.

15

```
17          Q.>You have a license to operate under
18     Alabama law; is that correct?
19          A.>Yes.
20          Q.>What is your license?
21          A.>Therapeutic Foster Care Agency
22     License.
23          Q.>You have a Therapeutic Foster Care

1      License?
2           A.>Yes, still have a license still.
```
Camellia's Deposition pages 139-140, Exhibit 7 Evidentiary Materials in Support of Motion.

Furthermore, the third procedural due process requirement is "constitutionally inadequate state procedures." *Bank of Jackson County v. Cherry*, 980 F.2d at 1357. In *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (*en banc*), the Eleventh Circuit Court of Appeals stated that "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under §1983 arise." It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim. See *Id.;* see also *Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999); *Harris v. Board of Education of the City of Atlanta*, 105 F.3d 591, 596 (11th Cir. 1997). This rule (that a procedural due process claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to "remedy the procedural failings of its subdivisions and agencies in the appropriate for agencies, review boards, and state courts" before being subjected to a claim alleging a procedural due process violation. See *McKinney*, 20 F.3d at 1560; see also *Horton v. Board of County Commissioners of Flagler County*, 202 F.3d 1297, 1300 (11th Cir. 2000).

If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of

procedural due process. See *McKinney*, 20 F.3d at 1565. ("The fact that [McKinney] failed to avail himself of the full procedures provided by state law…does not constitute a sign of their inadequacy."); *Bell v. City of Demopolis, Ala.*, 86 F.3d 191, 192 (11th Cir. 1996); *Narey v. Dean*, 32 F.3d 1521, 1528 (11th Cir. 1994). To be adequate, the state procedure need not provide all the relief available. See *McKinney*, 20 F.3d at 1564. Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due. See *Cotton v. Jackson*, 216 F.3d 1328, 1333 (11th Cir. 2000) ("[b]ecause we believe a writ of mandamus would be available under state law … we conclude that Plaintiff has failed to show that inadequate state remedies were available.")

There are numerous state remedies available to Plaintiff in this case to address any alleged procedural due process violations. In *Phillips v. Thomas*, 555 So.2d 81 (Ala. 1989), a case involving an official capacity action against Alabama Department of Human Resources officials, the Alabama Supreme Court described declaratory judgment action, actions to compel a legal duty (*i.e.*, by injunction or mandamus), actions to compel (*i.e.*, by injunction or mandamus) performance of a ministerial act required by state law or agency rules, as well as actions asserting that the failure to provide notice as the result of a mistaken interpretation of law as all valid and available actions against state officials under Alabama law. See also *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000), explaining the state-agent immunity doctrine. Plaintiff is and has been represented by legal counsel and is therefore presumably fully aware of State law remedies but has not exhausted those remedies. Plaintiff has therefore failed to state a federal cause of action for 14th Amendment denial of procedural due process. The case should be dismissed or summary judgment granted to Defendant DHR.

## VII.    PUNITIVE DAMAGES ARE NOT AVAILABLE AGAINST DHR

17

Punitive damages, are not available in suits brought under Title VI. *Barnes v. Gorman,* 536 U.S. 181, 189, 122 S.Ct. 2097, 153 L.Ed.2d. 230 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act" plaintiff claims fail on McDonnell Douglas analysis. Dr. Appiah testified as follows:

```
 4          Q.>And you received some letters back
 5     from DHR indicating that you were not going to be
 6     granted a hearing; isn't that correct?
 7          A.>Yes, sir.
 8          Q.>That was all in 2005?
 9          A.>Yes, sir.
10          Q.>It is a fact that you did not appeal
11     that denial to any Alabama court?
12          A.>No, I appealed to the Board.
13          Q.>You appealed to the Board?
14          A.>Yes, DHR Board.
15          Q.>But you didn't appeal to the court?
16          A.>Well, Section 660 didn't tell me I
17     could appeal to the Board?
18          Q.>But you didn't file anything in
19     circuit court, did you?
20          A.>No, not for this one.  I didn't file
21     for an appeal.
```

Camellia's Deposition page 144.  Having not taken advantage of state records available to them, Camellia has suffered no deprivations and has no remedy in federal court.

## VIII.   PLAINTIFF CLAIMS FAIL ON McDONNELL DOUGLAS ANALYSIS

Since they both require proof of intentional purposeful discrimination and no direct evidence has been proffered,  Plaintiff's disparate treatment race discrimination claims under Title VI and the Fourteenth Amendment are both subject to analysis under *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the context

of claims of racial discrimination in awarding contracts, the analysis has been explained as

follows:

> Under the familiar *McDonnell Douglass/Burdine* framework, the court employs a three part test designed to determine the motivation of the defendant in taking the challenged action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d (1981).
>
> The initial burden rests with the plaintiff to demonstrate by a preponderance of the evidence a *prima facie* case of discrimination. *Id.* at 252-53, 101 S.Ct. at 1093-94. This burden is not onerous, *id.* at 253, 101 S.Ct. at 1094, and can be met by simply demonstrating that the plaintiff is a member of a minority group, that he submitted an application or bid which met the requirement for an available contract, that the application or bid was ultimately rejected, and that the contract was eventually given to an individual who is not a member of a protected class. *Patterson v. McLean Credit Union*, 491 U.S. at 187, 109 S.Ct. at 2378, 105 L.Ed.2d 164 at 157; *Zaklama v. Mount Sinai Medical Center*, 842 F.2d 291, 293 (11th Cir. 1988). Thereafter the defendant must come forward with evidence demonstrating legitimate, nondiscriminatory reasons for its conduct. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. It is important to note that the burden on the defendant is one of production not persuasion. *Id.* at 254-55, 101 S.Ct. at 1094-95; *Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 618-19 (11[th]Cir. 1983). Once the defendant satisfied this obligation, it is incumbent on the plaintiff to produce evidence suggesting that those reasons are merely a pretext, the real reason for the action having been based on race. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

*Brown v. American Honda Motor Company*, 939 F.2d 946, 958-959 (11[th]Cir. 1991)

(parenthesis information added). See also, *Reshan International, Inc v. Kalamazoo*,

___ F.Supp. ___, 1997 WL 327117 at page 3 (W.D. Mich. May 5, 1997):

> In order to establish a prima facie case of race discrimination under the *McDonnell Douglas/Burdine* standard, Seyoum must

show that he is a minority contractor, he was qualified for the contract on which he bid, he was not awarded the contract, and another person was. See *Mitchell*, 964 F.2d at 584. See also, *T & S Assocs., Inc. v. Crenson*, 666 F.2d 722, 725 (1stCir. 1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973)); *Polote Corp v. Metric Constructors, Inc.,* 880 F.Supp. 836, 846 (S.D.Ga.1995) (also citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). If Seyoum can establish a prima facie case of discrimination, then Defendants must articulate a legitimate nondiscriminatory reason for awarding the 1994 towing contract to McDonald's Towing. See *Mitchell*, 964 F.2d at 584 (citing *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093). If defendants can articulate a legitimate summary judgment, Seyoum must establish that the proffered reason was pretextual. *Id.*

However, cases involving the award of public contracts call for a modification of the prima facie case portion of the *McDonald Douglas* standard. This is because "(a) public bid offering, unlike the usual employment decision, typically finds the employer seeking only a single contractor out of a rather limited pool of companies which submit proposals." *T & S Service Associates, Inc. v. Crensen*, 666 F.2d 722, 725 (1[st]Cir. 1981). The modified prima facie case formula can be summarized as follows:

Accordingly, modifying the *McDonnell Douglas* guidelines to fit this situation, we believe that the present plaintiff, T & S, would prove its prima facie case by showing, by a preponderance of the evidence, that (i) T & S is a minority-owned firm; (ii) T & S 's bid met the specifications required of those competing for the contract; (iii) the T & S bid was significantly more advantageous to the Committee than the bid actually awarded, whether in terms of price or some other relevant factor; and (iv) the Committee selected another contractor.

*T & S Associates, Inc. v. Crenson*, 666 F.2d at 725 (footnote omitted).

In a May 16, 2005, Memorandum to Alabama Legislators, DHR Commissioner Page Walley described the process and objectives of the 2005 Therapeutic Foster Care (TFC) Request For Proposal (RFP) as follows:

I am writing to advise you of some changes with the way the Department contracts for therapeutic foster care (TFC). I know you are keenly interested in the service that foster parents provide to this agency and the value they contribute to the lives of children in the state's care.

Foster parents who provided TFC are for the most part licensed by private agencies and then we contract with the private agency to purchase TFC for our children who need TFC. These children exhibit emotional and behavioral problems beyond those placed in our regular homes but are not in need of residential care.

We issued the RFP for 1,210 children in need of TFC and were extremely pleased to received proposals to serve 3,680 children from over 22 providers. Having a surplus of qualified proposals extended our ability to have resources in regions close to a child's home and choices of providers. One group of child welfare experts scored the proposals. A different group of child welfare placement experts made the final selections. We only considered proposals that received a score of 80% or higher on the criteria.

The providers chosen by the selection committee are regionally distributed throughout the state. However, the selection outcomes have resulted in some current TFC providers not being awarded a contract or not being awarded a contract for the volume of services which they currently provide. You will likely hear form the TFC providers that have, in the past, had the vast majority of the business. We believe that having a more diverse and larger number of providers is better for the Department and the children.

As a result of the RFP selections, we will have some children who cannot continue to reside in their current setting because the program was not selected. I want to assure you than **any** move of a child that takes place will be orderly and involve an Individualized Service Plan, which is agreed upon by a group of stakeholders who have interest in planning for permanency for the child. Decisions will not be made hastily. The Department will follow all requirements of the R.C. Consent Decree in these cases. In some instances a child may no longer need TFC an will be "stepped-down" into the one of our regular foster homes or a permanent living environment. In other instances the TFC home may choose to move to another

agency that has openings as a result of the RFP.  In that case
the child would remain in their foster home.

Memorandum dated May 16, 2005 to Alabama Legislators from Page Walley, DHR
Commissioner, Exhibit 1 Evidentiary Materials in Support of Motion.

Attached to the May 16, 2005 Memorandum to Alabama Legislators is a Chart listing
all the programs, i.e. vendors, who submitted responses to the Request For Proposal and the
score given to each proposal. Exhibit 1 Evidentiary Materials in Support of Motion. The
programs are listed, i.e. ranked, on the Chart according to the highest score given of the 22
programs listed, 17 programs scored higher than 800 points (the lowest score qualifying for a
contract) out of a total possible score of 1000 points. The chart further lists the allocation of
1210 slots (i.e. placements for children) distributed to each of the 17 qualifying providers
spread across nine (9) regions areas of the State. Counties included in each of the nine (9)
regions are listed on pages 7-8 of the RFP for Therapeutic Foster Care issued by DHR.
Exhibit 4, Evidentiary Materials in Support of Motion.

After the initial award of slots, three (3) reallocations of slots became necessary and
were implemented by DHR to qualifying programs scoring over 800 points. Eagle Rock (8
slots) (i.e. Sheriff's Ranches), Child and Family Services (8 slots), and New Way Out (70
slots) ran into licensing problems and had to have their cumulative 78 slots reallocated to
other qualifying providers scoring over 800.  See Affidavit of Susan Ward, Exhibit 9, and
Charts Exhibit 1 and Exhibit 10, Evidentiary Materials in Support of Motion. Secondly,
several qualified programs scoring over 800 points who were awarded slots in particular
regions were unable to locate sufficient foster homes in those regions to serve the children.
See Affidavit of Susan Ward, Exhibit 9 and Charts Exhibit 10, Evidentiary Material in
Support of Motion. Nine (9) programs notified DHR that they would be unable to serve 252

children. 226 of those 252 slots were reallocated to other qualified programs scoring over 800 points, leaving 26 slots unfilled (one slot in region 5 and 25 slots in region 8). See Chart Exhibit 10, and Affidavit of Susan Ward, Exhibit 9, Evidentiary Materials in Support of Motion. Finally in a third reallocation, an subsequent RFP was issued for region 8 slots, for which Plaintiff Camellia TFC did not submit a response. Affidavit of Susan Ward, Exhibit 9, Evidentiary Materials in Support of Motion. The final allocations are listed on a chart attached to Memorandum to County Directors dated December 28, 2006 entitled "Final Therapeutic Facts Care Allocations." Exhibit 3, Evidentiary Materials in Support of Motion.

Plaintiff Camellia is required under the McDonnell Douglass standard to establish a *prima facie* case. No acquiescence by Defendant is needed or given. In this regard, Camellia's low "non-qualify score, prevents Plaintiff from establishing a *prima facie* case. In *Allen v. Rumsfeld*, 72 Fed. Appx. 497 (8th Cir. 2003), the court held that:

> Allen's low scores on the skills narrative evaluation preclude her from establishing a prima facie case because they indicate that she was not as qualified as the fifty-six employees who were promoted.

*Allen v. Rumsfeld*, 72 Fed. Appx. at 499

In much the same way, Camellia cannot meet the "qualified" requirement for establishing a prima facie case. As the Eighth Circuit further pointed out, "the participation in relevant activities was not race-specific and … the individuals rating the skill narratives had no information regarding the race, color or national origin of the applicants." *Allen v. Rumsfeld*, 72 Fed. Appx. at 499. The same is true in this case.

Additionally, to establish a *prima facie* case it is necessary that Plaintiff establish by clearly supported evidence that programs awarded a contract were "owned" by persons of another race. Presumptions, assumptions, and speculations are not enough. Plaintiff cannot

demonstrate the Commission's unlawful motive through inadmissible hearsay, speculation, conjecture, assumptions of facts not in evidence, or speculative testimony of witnesses lacking personal knowledge.  See *Macuba v Deboer,* 193 F.3d 1316, 1322-24 (11th Cir. 1999); *Daniels v Twin Oaks Nursing Home,* 692 F.2d 132`1, 1326 (11th Cir. 1982).  In Camellia's Deposition, Dr. Appiah stated that the programs or agencies listed in the chart that submitted responses to the RFP and were awarded contracts were all white "owned" except one.  See Camellia's Deposition pps. 45-52, Exhibit 7, Evidentiary Materials in Support of Motion.  According to Dr. Appiah, the only black "owned" program awarded a contract was Seraaj Family Homes, owned by Abdul Seraaj.  In a puzzling response, Dr. Appiah states that he includes among white "owned" programs those programs operated by large religious and governmental organizations:

| 21 | Q.>UMCH, which is United Methodist |
| 22 | Church Homes, how do you know they are white-owned? |
| 23 | A.>I am a pastor, I know. |
| | |
| 1 | Q.>It is church-owned? |
| 2 | A.>It is a white church, yes sir. |
| 3 | Q.>Therapeutic Programs, Incorporated, |
| 4 | that is TPI? |
| 5 | A.>That is Dr. William Mitchell.  Yes, I |
| 6 | was his foster parent.  I know him personally, |
| 7 | white man. |
| 8 | Q.>LCYDC, Lee County Youth Development |
| 9 | Center? |
| 10 | A.>It is white-owned. |
| 11 | Q.>But that is an agency in Lee County, |
| 12 | run by the County? |
| 13 | A.>Yes, it is organized by the white |
| 14 | people. |
| 15 | Q.>Alabama Mentor? |
| 16 | A.>That is white-owned. |
| 17 | Q.>Wilmer Hall? |
| 18 | A.>White-owned. |

| 19 | Q.>It is a Catholic church? |
| 20 | A.>Episcopal – England. |
| 21 | Q.>In Mobile? |
| 22 | A.>Yes. |
| 23 | Q.>And you say that is white-owned? |
| | |
| 1 | A.>Yes. |

Camellia's Deposition pps 53-55, Exhibit 7 Evidentiary Materials in Support of Motion.

DHR had legitimate nondiscriminatory reasons for awarding contracts to other programs and not to Camellia based upon the higher RFP response scores of those programs. The RFP scoring process was manifestly legitimate and reasonable. Programs with a scoring average of 800 points or above out of a total possible score of 1000 points were awarded contracts. Exhibit 1, Memorandum to Alabama Legislators, Evidentiary Materials in Support of Motion. Camellia's average score was 753 points out of a possible 1000 points and therefore was not awarded a contract. Exhibit 1 Chart, Evidentiary Materials In Support of Motion. Black "owned" Seraaj Family Homes had a scoring average of 854.75 and after all the reallocations was ultimately awarded a total of 262 slots spread across all nine regions of the State. See Final Allocation Chart Exhibit 3, Evidentiary Materials in Support of Motion.. According to the Chart submitted to the Alabama Legislature, the size of the contract awarded to black "owned" Seraaj Family Homes (208 slots) represented at that time fully 17.19% of all (1,210) slots awarded. This made Seraaj Family Homes the program which received the second highest number of slots under the RFP. Memorandum to Alabama Legislators, Exhibit 1, Evidentiary Materials in Support of Motion.

It is important to bear in mind that DHR's burden of rebuttal is "exceedingly light." *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir. 1994). Defendant DHR need not persuade the court that it was actually motivated by the proffered reasons. Instead, "it is sufficient if the

defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254-55, 101 S.Ct. 1089.  The explanation provided must be legally sufficient to justify a judgment for the defendant.  *Id.*  At this stage of inquiry, the defendant need not persuade the court that it proffered reasons are legitimate; the defendant's burden is "merely one of production, not proof."  *Lee v. Russell County Board of Education*, 684 F.2d 769, 773 (11th Cir. 1982).  The evidence presented by DHR meets its burden of production.

Once the employer satisfies its burden of production, " the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing a prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given … were not the real reasons for the …. decision.' " *Chapman  v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citations omitted).  The establishment of a prima facie case does not in itself entitle a plaintiff to survive a motion for summary judgment.  *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir. 1987).

Testifying as the representative, owner, and  CEO of Plaintiff Camellia TFC, Dr. Appiah essentially stated that, in his opinion, Camellia was more qualified and more experienced in this State than some of the programs that received contracts.  Dr. Appiah termed DHR's RFP contract award process "unfair."  (Camellia's Deposition page 71 line 10, Exhibit 7, Evidentiary Materials in Support of Motion), and "ridiculous" (Camellia's Deposition page 70 line 21, Exhibit 7, Evidentiary Materials in Support of Motion).  He complains that some programs were awarded contracts even though they were new to the State.  Camellia's Deposition pages 82 lines 16-23.

However, even Dr. Appiah admitted that the RFP criteria gave no weight to the operational experience of the program in this State. Camellia Deposition page 84 lines 6-23. In this regard, this Court should remember that in the Memorandum to members of the Legislature, DHR Commissioner Page Walley stated that one of the objectives of the RFP was to expand both the number and geographical distribution of TFC homes and providers in the state., i.e. "(w)e believe that having a more diverse and larger number of providers is better for the Department and the children." Memorandum to the Alabama Legislators dated May 16, 2005 page 1, Exhibit 1 Evidentiary Materials in Support of Motion. Since inclusion would have worked against this objective, it is not surprising that points were not available for operational experience within the State. Even so Dr. Appiah later admitted that most of the programs awarded contracts had more total experience than Camellia, which had three years experience. Camellia's Deposition pps 87-93, Exhibit 7, Evidentiary Materials in Support of Motion.

Federal courts "do not sit as a super … department that reexamines (DHR's) business decisions." *Damon v. Fleming Supermarkets, Inc.*, 195 F.3d 1354, 1361 (11th Cir. 1999) (parenthetical information added). "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, (Title VI) does not interfere. Rather, (this court's) inquiry is limited to whether … (DHR) gave an honest explanation of its behavior." *Chapman v. AI Transport*, 229 F.3d at 1030 (parenthetical information added). "It is not the court's role to second-guess the wisdom of (DHR's) decisions as long as the decisions are not racially motivated." *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000) (parenthetical information added). As long the reason is not discriminatory, (DHR may award TFC contracts) for a good reason, a bad

reason, a reason based on erroneous facts, or for no reason at all." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (parenthetical information added). More specifically, "disparities in qualifications (e.g. operational experience within the State) are not enough in and of themselves to demonstrate intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." *Deines v. Texas Department of Protective and Regulatory Services*, 164 F.3d 277, 280 (5th Cir. 1999). See also, *Chapman v. AI Transport*, 229 F.3d at 1050 (Reasonable people may disagree about whether (DHR) acted correctly or fairly, "but such potential disagreement does not without more, create a basis to disbelieve (DHR's) explanation that it in fact based its decision" on it's asserted non-discriminatory reasons.") (parenthetical information added). See also, *Cofield v. Goldkist, Inc.,* 267 F.3d 1264, 1269 (11th Cir. 2001) (affirming summary judgment for employer and holding: "We will not second-guess (the employer's) decision to emphasize qualifications over length of service," because the courts do not sit as super-personnel departments that re-examine the entities' business decisions.").

DHR states that the RFP process was intended to increase both the number and geographical disposition of service providers in the State. Exhibit 1, Evidentiary Materials in Support of Motion. DHR decided to use a scoring process for responses submitted to the RFP. *Id.* DHR decided to establish 1000 points as the maximum score and 800 points as the cut-off score qualifying for a contract. *Id.* Camellia was permitted to submit a response like other programs and did so. The score for Camellia simply fell below the cut-off score. *Id.* There was no racial discrimination in the award of the contracts. In fact, a black "owned" program, Seraaj Family Homes, scored higher than the 800 point cut-off and was initially awarded 17.19% (208) of all awarded slots distributed across every region of the State.

Exhibit 1, Chart Attachment, Evidentiary Materials in Support of Motion.   Later after

reallocations, the slots awarded to Seraaj were increased to 269 slots.   Exhibit 10 Chart,

Evidentiary Materials in Support of Motion.   The 262 slots awarded Seraaj is close to the

"269" average number of slots awarded Seraaj in FY 2005.   See Exhibit 1 Chart, Evidentiary

Materials in Support of Motion.

RESPECTFULLY SUBMITTED,

TROY KING (KIN047)
ATTORNEY GENERAL

SHARON FICQUETTE (FIC001)
CHIEF LEGAL COUNSEL


  **_s/ James E. Long_**
James E. Long - LON016
Deputy Attorney General

State of Alabama
Department of Human Resources
P.O. Box 304000
Montgomery, Alabama  36130-4000
Phone:  (334) 242-9330
Fax:  (334) 242-0689

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing **MOTION TO DISMISS FOR SUMMARY JUDGMENT BY DEFENDANT ALABAMA DEPARTMENT OF HUMAN RESOURCES** on the following by placing a copy thereof, addressed as indicated below, in United States Mail, First Class postage prepaid, on this the 29th day of May 2007.

Hon. Kathryn Dickey
Attorney at Law
322 Alabama St.
Montgomery, AL  36104


Hon. Jamie Spears-Turk
Attorney at Law
2735 Office Park Cir.
Montgomery, AL  36116


**_s/ James E. Long_**_____
James E. Long – LON 016
Deputy Attorney General

State of Alabama
Department of Human Resources
P.O. Box 304000
Montgomery, Alabama  36130-4000
Phone:  (334) 242-9330
Fax:  (334) 242-0689

ATTORNEY FOR DEFENDANT ALABAMA
DEPARTMENT OF HUMAN RESOURCES