IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **CAMELLIA THERAPEUTIC FOSTER AGENCY** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | CASE NO. 2:06 CV 735-MHT |
| ) | |
| **ALABAMA DEPARTMENT OF HUMAN RESOURCES** ) | |
| ) | |
| Defendant. ) | |

**DHR'S SUPPLEMENTAL BRIEF ON IMMUNITY ISSUES**

COMES NOW Defendant Alabama Department of Human Resources (hereafter referred to as "DHR"), and files this Supplemental Brief On Immunity Issues as directed by the Court.  DHR shows onto the Court as follows:

I. THERE HAS BEEN NO ABROGATION OF SOVEREIGN OR ELEVENTH AMENDMENT IMMUNITY

II. DHR AND HAS NOT WAIVED SOVEREIGN OR ELEVENTH AMENDMENT IMMUNITY.

III. DHR HAS NOT WAIVED SOVEREIGN OR ELEVENTH IMMUNITY BY PARTICIPATION IN FEDERAL PROGRAMS.

IV. DHR HAS NOT WAIVED IMMUNITY BY THE REMOVAL OF THIS CASE.

V. SECTION 504 IS NOT ENFORCABLE SPENDING CLAUSE LEGISLATION.

VI.  THE TENTH AMENDMENT PROHIBITS THE RELIEF REQUESTED.

I.  THERE HAS BEEN NO ABROGATION OF SOVEREIGN OR ELEVENTH AMENDMENT IMMUNITY.

The Eleventh Amendment to the Constitution of the United States is a jurisdictional bar to a suit against an unconsenting state in federal court.  *Hans*, *supra*; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).  Generally, the Eleventh Amendment is a complete bar to lawsuits brought in federal court against a state or state agency by Individuals.  *Halderman*, 465 U.S. at 98-100, 104 S.Ct. at 906-908 (Eleventh Amendment bar to suit against state and state agencies applies "regardless of the nature of the relief sought.").  *See Edelman v. Jordan*, 415 U.S. 651, 662-663, 94 S.Ct. 1347, 1355-1356, 39 L.Ed.2d 662 (1974); *Carr v. City of Florence*, 916 F.2d 1521 (11th Cir. 1990).  Additionally, in *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3037, 57 L.Ed.2d 1114 (1978), the United States Supreme Court held that actions for injunctive relief against a state or its instrumentalities were not an exception to the Eleventh Amendment bar.

Sovereign immunity is not absolute, however.  There are two ways in which a state may surrender Eleventh Amendment sovereign immunity.

> First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment—an amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).  Second, a state may waive its sovereign immunity by consenting to suit.  *Clark v. Barnard*, 108 U.S. 436, 447-448, 2 S.Ct. 878, 27 L.Ed. 780 (1883)

*Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). The first method is generally referred to as "abrogation" while the second method is called "waiver."

At one time there were two recognized constitutional sources from which Congress could derive power to validly abrogate Eleventh Amendment sovereign immunity. One source was the Commerce Clause of Article I of the Constitution. *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 19-20, 109 S.Ct. 2273, 2284, 105 L.Ed.2d 1 (1989). The other source was § 5, the so-called enforcement provision, of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976).

In a change of heart, the United States Supreme Court has concluded that Article I *cannot* be used to abrogate Eleventh Amendment sovereign immunity. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72-73, 116 S.Ct. 1114, 1131-1132, 134 L.Ed.2d 252 (1996). In *Seminole Tribe*, the United States Supreme Court identified the following ways by which Congress may exercise its authority to abrogate state sovereign immunity:

> In order to determine whether Congress has abrogated the States' sovereign immunity, we ask two questions: first, whether Congress has "unequivocally expresse[d] its intent to abrogate the immunity," *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985); and second, whether Congress has acted "pursuant to a valid exercise of power," *ibid*.

*Seminole Tribe*, 517 U.S. at 55, 116 S.Ct. at 1123. The sole remaining constitutional source for abrogating Eleventh Amendment sovereign immunity, according to the United States Supreme Court, in several decisions, is § 5 of the Fourteenth Amendment. *Id.*; *see also College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S.

666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 639, 145 L.Ed.2d 522 (2000).

The United States Supreme Court's has clearly admonished that:

> The Eleventh Amendment restricts the judicial powers under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Seminole Tribe*, 517 U.S. at 72-73, 116 S.Ct. at 1131-1132.

The Supremacy Clause ensures as the "supreme law of the land only those Federal Acts that accord with the constitutional design." *Alden v. Maine*, 527 U.S. 706, 731, 119 S.Ct. 2240, 2255, 144 L.Ed.2d 636 (1999):

> The Constitution, by delegating to Congress the power to establish the supreme law of the land when acting within its enumerated powers, does not foreclose a State from asserting immunity to claims arising under federal law merely because that law derives not from the State itself but from the national power. … We reject any contention that substantive federal law by its own force necessarily overrides the sovereign immunity of the States. When a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States.

*Alden v. Maine*, 527 U.S. at 732.

As *Alden v. Maine* points out, the question is not whether state sovereignty frustrates the federal laws but whether the federal laws frustrate state sovereignty. The United States Supreme Court has held that allowing states to be sued by their citizens frustrates immunity:

> Private suits against nonconsenting States, however, present "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties," *In re Ayers*, *supra*, at 505, 8 S.Ct. 164; accord, *Seminole Tribe*, 517 U.S. at 58, 116 S.Ct. 1114, *regardless of the forum*. Not only must a State *defend or default* but also it must face the prospect of being thrust by federal fiat and against its will, into the disfavored status of a debtor, subject to the power of private

4

>     citizens to levy on its treasury or perhaps even government
>     buildings or property which the State administers on the
>     public's behalf.

*Alden v. Maine*, 527 U.S. at 749 (emphasis added).

The Supreme Court, in *Alden v. Maine*, *supra*, held that "the text and history of the Eleventh Amendment also suggest that Congress acted not to change but to restore the original constitutional design." *Alden*, 527 U.S. at 722. The Court held that the Supremacy Clause in Article I, § 8, of the Constitution "does not foreclose a State from asserting immunity to claims arising under federal law." *Id.* at 732. *Alden* also holds that "neither the Supremacy Clause nor the enumerated powers of Congress confer authority to abrogate the State's immunity from suit in federal court." *Id.* at 733.

The states did not intentionally or otherwise authorize a broad-based surrender of their sovereign immunity in adopting the United States Constitution. The Supreme Court held in *Seminole Tribe* that Congress may not abrogate state sovereign immunity by legislation passed pursuant to its Article I powers. 517 U.S. at 71-74, 116 S.Ct. at 1131-1132. The Supreme Court thereby overruled *Pennsylvania v. Union Gas*, *supra*, its only prior case finding congressional authority to abrogate state sovereign immunity pursuant to an Article I power, and "restored the balance of power between Congress and the Judiciary anticipated by the Framers in Article I and Article III of the Constitution…." *Close v. New York*, 125 F.3d 31, 38 (2d Cir. 1997).

In *Seminole Tribe*, the Supreme Court was faced with Congress' use of its authority under the Indian Commerce Clause, which is found in Article I, § 8, clause 2. *See* U.S. CONST. art. 1, § 8, cl. 2 ("Congress shall have power…To regulate Commerce…with the Indian Tribes"). *College Savings Bank v. Florida Prepaid*, *supra*, held that Congress cannot

abrogate state sovereign immunity under the Patent Clause in Article I, § 8, clause 7.  *See* U.S. CONST., art. I, § 8, cl. 7 ("to promote the progress of secure and useful arts, by securing for limited time to authors and inventors the exclusive right to their respective writings and discoveries").  *College Savings Bank* reaffirms that there is no exception to *Seminole Tribe* for exclusively federal powers, even those involving exclusive federal jurisdiction.

In *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the Supreme Court stated that, for legislation to be appropriate enforcement legislation under the Fourteenth Amendment, § 5, it must meet the standards of *City of Boerne v. Flores*, 521 U.S. 507, 519-520, 117 S.Ct. 257, 138 L.Ed.2d 624 (1997), that the enforcement power of Congress is *remedial* in nature only, meaning that:

> 1)   The legislation must be designed to "deter or remedy" a constitutional violation.  Congress does not have the power to change or determine what is a constitutional violation; and
>
> 2)   There must be congruence and "proportionality" between the injury to be prevented and the means adopted to that end.

*Kimel*, 521 U.S. at 81.

## II. DHR AND HAS NOT WAIVED SOVEREIGN OR ELEVENTH AMENDMENT IMMUNITY.

Having determined that Eleventh Amendment sovereign immunity has not been abrogated, we now turn to the question of whether DHR is entitled to assert sovereign immunity and whether that immunity has been waived.  Generally, the Eleventh Amendment prohibits actions seeking a monetary award from a state, state agency, or state employee sued in his or her official capacity.  *Edelman v. Jordan*, 415 U.S. 651, 662-663, 94 S.Ct. 1347, 1355-1356, 39 L.Ed.2d 662 (1974); *Carr v. City of Florence*, 916 F.2d 1521 (11th Cir. 1990).

To ascertain whether an entity is an arm of the state, the Court must examine state law. *Brown v. East Central Health District*, 752 F.2d 615, 617 (11th Cir. 1985). By statute, the Department of Human Resources has sovereign immunity. ALA.CODE § 38-2-8 (1975); *Mitchell v. Davis*, 598 So.2d 801 (Ala. 1992) ("DHR and the BCDHR [Barbour County DHR], as State agencies, can assert the defense of absolute immunity from suit." (Parenthetical information added.)); *see also Ross v. State of Alabama*, 893 F.Supp. 1545, 1550 (M.D.Ala. 1995) (holding that by statute the Houston County DHR is a division of the State Department of Human Resources and operates under its direction. Thus, the Court concludes that the Houston County DHR is a state agency for purposes of the Eleventh Amendment.").

The test for determining whether a state has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero*, 473 U.S. at 241. To date, the Supreme Court has identified only three ways in which a state may effect a waiver of its Eleventh Amendment sovereign immunity: (1) by state statute or constitutional provision, *see Pennhurst*, 465 U.S. at 99; (2) by participation in a federal program, *see Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974); or (3) by certain conduct, such as filing a complaint, in federal court, *see Clark v. Barnard*, 108 U.S. at 447-448. In order to constitute waiver of Eleventh Amendment immunity from suit in federal court, a state statute must employ language that is either explicit, or else admits of no other reasonable interpretation. *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347; *Gamble v. Florida Dept. of Health and Rehabilitative Services*, 779 F.2d 1509, 1512 (11th Cir. 1986).
Alabama does not have a general statutory or constitutional provision waiving its sovereign immunity. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990):

7

> The state of Alabama has not waived its immunity. *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989); *Parker v. Williams*, 862 F.2d 1471, 1476 (11th Cir. 1989). Article 1, section 14 of the Alabama Constitution of 1901 expressly states that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Carr v. City of Florence*, 916 F.2d at 1525.

Neither does Alabama have any state statutes waiving immunity in DHR child welfare or other programs. *See* ALA.CODE § 38-2-6, *et seq.* (1975). First, a waiver of Eleventh Amendment immunity by state statute or constitutional provision must be clear and unequivocal in order for it to be effective. *Seminole Tribe*, 517 U.S. at 55-56, 116 S.Ct. at 1122-1123. It must be "stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 678, 119 S.Ct. 2219, 2227, 144 L.Ed.2d 605 (1999) (quoting *Edelman v. Jordan*, 415 U.S. at 673 (internal quotation marks omitted)). The following examples of provisions in state statutes and constitutions, which the Supreme Court held would *not* effectuate a waiver, give an idea of how clear the waiver must be: a statement consenting to suit in the courts of its own creation does not waive immunity. *Smith v. Reeves*, 178 U.S. 436, 441-445, 20 S.Ct. 919, 921-923, 44 L.Ed. 1140 (1900); a declaration of the state's intention that it or one of its agencies can "sue or be sued" does not waive immunity. *Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Ass'n*, 450 U.S. 147, 149-150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981); and a statement authorizing suits against the state or one of its agencies "in any court of competent jurisdiction," does not waive immunity. *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 577-579, 66 S.Ct. 745, 747, 90 L.Ed. 862 (1946).

## III. DHR HAS NOT WAIVED SOVEREIGN OR ELEVENTH IMMUNITY BY PARTICIPATION IN FEDERAL PROGRAMS.

Second, mere participation in a federal program or an agreement to recognize and abide by federal laws, regulations, and guidelines is insufficient to waive Eleventh Amendment immunity. *See Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 246, 247, 105 S.Ct. 3142, 3149-3150, 87 L.Ed.2d 171 (1985) (holding that participation in federal programs and receipt of federal funds under such programs "fall[] far short of manifesting a clear intent…to waive immunity"); *Florida Nursing Home Ass'n*, 450 U.S. at 150, 101 S.Ct. at 1034 (stating that state agency's explicit agreement "to obey federal law in administering the federal program" can hardly be deemed an express waiver of Eleventh Amendment immunity); *Edelman*, 415 U.S. at 673-674, 94 S.Ct. at 1360-1361 (holding that neither mere participation in a federal program nor a provision requiring compliance with federal law is sufficient to establish that the state consented to be sued in federal court. *Atascadero*, 473 U.S. at 238 n.1 & 241, 105 S.Ct. 3145 n.1 & 3146-3147; *College Savings Bank*, 527 U.S. at 679-683, 119 S.Ct. 2219, 2228-2229, 144 L.Ed.2d 605 (rejecting the *Parden v. Terminal Ry. of Alabama State Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), doctrine of constructive consent because it conflicts with the longstanding requirement that a waiver of a constitutional right must be unequivocally expressed and altogether voluntary). A state's receipt of federal funds does not automatically constitute a waiver of its Eleventh Amendment immunity. The Supreme Court in *South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) described the limited circumstances in which a waiver will be recognized: (1) Federal expenditures must benefit the general welfare; (2) the conditions imposed on the recipients must be unambiguous; (3) The conditions must be

9

reasonably related to the purpose of the expenditure; and (4) No condition may violate any independent constitutional prohibition.  *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 278 (5th Cir. 2005), citing *Dole*,483 U.S. at 207-08, 107 S.Ct. 2793.  *Dole* also recognizes a fifth requirement that the condition may not be coercive.  *Id.*

      A State waives its immunity by voluntarily participating in federal spending programs only when Congress includes a clear statement of intent to condition participation in the programs on a State's consent to waive its constitutional immunity.  *Atascadero*, 473 U.S. at 247, 105 S.Ct. 3142.  "By insisting that congress speak with a clear voice, we enable the States to exercise their choice [to waive sovereign immunity] knowingly."  *Pace*, 403 F.2d at 279 9quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694).  In seeking to determine whether the language of a condition is sufficiently clear, courts must view the statute "from the perspective of a state official who is engaged in the process of deciding whether the state should accept [federal] funds and the obligations that go with those funds," asking "whether … a state official would clearly understand [the nature of the condition]."  *Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*,  --- U.S. ---, 126 S.Ct. 2455, 2459, 165 L.Ed.2d 526 (2006).  "In a Spending Clause case, the key is not [the intention of Congress] but what the States are clearly told regarding the conditions that go along with the acceptance of … funds."  *Id.* at 2463.  A statute must furnish "clear notice regarding the liability at issue" to which the state has allegedly waived its immunity.  *Id.* at 2459.

**IV. DHR HAS NOT WAIVED IMMUNITY BY THE REMOVAL OF THIS CASE.**

The third ground for waiver, *i.e.*, certain conduct such as filing a complaint in federal court, is the ground most frequently at issue in bankruptcy court sovereign immunity waiver cases. In *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), the United States Supreme Court addressed the effect of filing a proof of claim in a bankruptcy proceeding on a state's assertion of Eleventh Amendment immunity. In that case, the State of New Jersey filed a proof of claim for unpaid taxes against the debtor. *Id.* at 570, 67 S.Ct. at 470. See also *Clark v. Barnard*, 108 U.S. 436, 447-448, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883) (holding that the State of Rhode Island had waived its sovereign immunity by voluntarily intervening as a claimant to a bankruptcy fund paid into federal court). In this case, there is no allegation that DHR has filed any complaint in this case.

In *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed2d 806 (2002), the United Supreme Court held that states waived sovereign immunity by taking certain actions in removing cases to federal court. Summarizing prior law, the court stated that "(t)his Court consistently has found a waiver when a state's attorney general, authorized (as here) to bring a case in federal court, has voluntarily invoked that Court's jurisdiction." *Lapides*, 535 U.S. at 622. The Court concluded that "the State's action joining the removal of this case to federal court waived its Eleventh Amendment immunity." *Lapides*, 535 U.S. at 624. The court specifically stated that it was limiting its holding "to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceeding. *Lapides*, 535 U.S. at 617. that clearly means the holding is limited to cases where sovereign immunity has been

11

waived. The Court went on to say that it did not need to "address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court." *Id.* at 618. Thus, the Court did not hold that removal of a federal claim from state court to federal court constituted a waiver of the underlying sovereign immunity. It was simply not an issue in the case.

Furthermore, one federal court of appeals, *Stewart v. North Carolina*, 393 F.3d 484 (4th cir. 2005), has considered the removal of a state-law claim in a situation that did not fit the *Lapides* pattern. North Carolina had not waived immunity from suit on the claim in its own courts. The Fourth Circuit found it improper to rely "exclusively" on *Lapides* because the Court in *Lapides* reserved judgment as to whether removal constituted waiver outside its exact situation. *Id.* at 490. "Nevertheless," the Fourth Circuit state, "the principles animating *Lapides* she light on the issue we resolve today." *Id.*

The difference in this case, however, is that the Alabama Department of Human Resources never sought removal of the case to federal court. The original Complaint in this case filed in the Circuit Court of Montgomery County, Alabama was filed against the following Defendants: Bob Riley, Governor of Alabama; Page Walley, Commissioner of the Department of Human Resources; and Susan Ward, Director of Federal and State contracts of the Alabama Department of Human Resources. Doc. 2. The Notice of Removal was filed by Riley, Walley, and Ward. Doc. 1. A Motion to Dismiss the original Complaint was filed and a dismissal order entered on September 26, 2006. Doc. 9; Doc. 10. Plaintiff filed a Motion to Amend the Complaint which was granted on September 26, 2006. Doc. 8; Doc. 10. The Amended Complaint named only the Alabama Department of Human Resources as the

Defendant. Doc. 13. A summons was issued to DHR (Doc. 14) and a return of service was filed confirming service on DHR on October 4, 2006. Doc. 15.

Alabama DHR has not waived its sovereign immunity. The Fifth Circuit Court of Appeals has ruled that state which later finds itself in a case removed to federal court has not waived its sovereign immunity.

> (A) state may find itself in a case removed to federal court without having joined in the removal. Such a state, having taken no affirmative act, has not waived immunity and can still assert it. Also contrary to plaintiffs' suggestion, the simple act of assuming jurisdiction over a case with a state defendant does not step on its sovereign immunity. A federal court may ignore sovereign immunity until the state asserts it.

*Frazier v. Pioneer America, LLC*, 455 F.3d 542, 547 (5th Cir. 2006) footnote omitted.

## V. SECTION 504 IS NOT ENFORCABLE SPENDING CLAUSE LEGISLATION

Consistent with its spending power, Congress may attach conditions on the receipt of federal funds. *See South Dakota v. Dole*, 483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). The spending power is not unlimited. The United States Supreme Court has recognized general limitations to the Spending Clause: (1) spending must be in pursuit of the general welfare; (2) any attached conditions must be unambiguous; (3) conditions must also be related to a federal interest; and (4) the obligations imposed by Congress may not violate any independent constitutional provisions. *See*, *Dole*, 483 U.S. at 207-208. Section 504 provisions are not clearly "unambiguous".

Spending-clause legislation is fundamentally different from laws passed pursuant to other sources of congressional power. Specifically, in a spending-clause enactment, Congress does not attempt to impose unilaterally a condition upon the states, but instead wields the "power of the purse" to regulate indirectly states' conduct by conditioning the

13

receipt of federal funds on states' compliance with particular conditions. *See Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981) (noting that "legislation enacted pursuant to the spending power is much in the nature of a contract; in return for federal funds, states agree to comply with federally imposed conditions"); *see also Davis v. Monroe County Board of Education*, 526 U.S. 629, 640, 119 S.Ct. 1661, 1670, 143 L.Ed.2d 839 (1999); *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 1997, 141 L.Ed.2d 277 (1998); *Guardians Assn. v. Civil Serv. Comm'n of New York City*, 463 U.S. 582, 599, 103 S.Ct. 3221, 3231, 77 L.Ed.2d 866 1983 (opinion of White, J.); *id.*, at 632-633, 103 S.Ct. 3221, 3249 (Marshall, J., dissenting); *Lau v. Nichols*, 414 U.S. 563, 568-569, 94 S.Ct. 786, 789, 39 L.Ed.2d 1 (1974).

In *Barnes v. Gorman*, 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002), the United States Supreme Court took a potentially significant leap toward limiting the reach of Spending Clause legislation. In a decision that bars private recovery of punitive damages under Title II of the Americans with Disabilities Act ("ADA"), the Supreme Court held that private recovery under Spending Clause legislation is limited to remedies either traditionally available for breach of contract or expressly provided for by statute. Writing for the Court, Justice Scalia held that punitive damages may not be awarded in a private cause of action under sections 202 and 504 of the ADA. He determined that punitive damages are not "appropriate relief" under sections 202 and 504. Justice Scalia based this conclusion on contract law principles. Congress enacted Title VI, from which sections 202 and 504 borrow their remedies, through its spending power. Justice Scalia noted that, in past cases, the Court has characterized Spending Clause legislation as "much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions."

14

*Barnes*, 122 S.Ct. at 2100-2101 (parenthetical information in the original). Thus, the Supreme Court has often applied contract law principles to determine the scope of liability under Spending Clause legislation. For example, recipients cannot be held liable for violating conditions on their federal grants unless Congress has imposed those conditions unambiguously. The rationale for this rule, based on contract law, is that recipients can be held liable only for terms they "voluntarily and knowingly accept[]." *Id.* at 2101. Defendants assert that state compliance with spending power legislation is dependent upon state agreement to comply and that there has been no affirmative agreement to accept constantly changing federal regulations and policy guidelines.

### VI. THE TENTH AMENDMENT PROHIBITS THE RELIEF REQUESTED

The Tenth Amendment to the Constitution of the United States is implicated where the financial incentives offered by the federal government to the states cross the impermissible line where "pressure turns into compulsion." *See Dole*, 483 U.S. at 211. Congress may use its spending power to influence a state's legislative choices by providing incentives for states to adopt certain policies, but it may not compel or coerce a state, or go so far as to "commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." *See New York v. United States*, 505 U.S. 144, 161, 112 S.Ct. 2408, 2421, 120 L.Ed.2d 120 (1992). Congress, under the Commerce Clause, may, however, offer the states a choice of regulation either under federal control or preemption under federal regulations. *See Hodel v. Virginia Surface Mining & Reclamation Association, Inc.*, 452 U.S. 264, 288, 101 S.Ct. 2352, 2366, 69 L.Ed.2d 1 (1981).

Alabama has not affirmatively agreed to federal employment and program participation requirements. Defendants assert that Section 504 and its accompanying

regulations and policy guidelines "cross the line" by compelling and coercing the state to spend millions of dollars to comply with employment and program participation requirements. Furthermore, the federal guidelines effectively have a coercive adverse effect on state budgets by requiring that actions that interfere with other state priorities.

Defendants also asserts that the federal statutes and regulations, in this case are impermissibly coercive in violation of the Tenth Amendment to the Constitution of the United States. In *Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), the Supreme Court applied this same Tenth Amendment analysis to invalidate a provision of federal law requiring state and local enforcement officers to conduct background checks on prospective purchasers. The *Printz* Court stated:

> We held in *New York* [*v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992)], that Congress cannot compel the States to enact or enforce a federal regulatory program. Today we hold that Congress cannot circumvent that prohibition by conscripting the State's officers directly. *The Federal Government may neither issue directives requiring the States to address particular problems, nor command the State's officers, or those of their political subdivisions, to administer or enforce a federal regulatory program.*

*Printz*, 521 U.S. at 935 (emphasis added). In *Reno v. Condon*, 528 U.S. 141, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000), the Supreme Court explained that the *New York* and *Printz* rulings were premised upon "federalism." *Condon*, 528 U.S. at 149 ("While Congress has substantial powers to govern the Nation directly, … the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions."). The same analysis applies here in this case. Congress may not coercively bind states to follow rules they had no notice of or did not agree to or rules in violation of Tenth Amendment federalism principles.

16

## CONCLUSION

This Court should dismiss Camellia Therapeutic Foster Agency's Complaint holding that Alabama DHR has sovereign and Eleventh Amendment immunity.

RESPECTFULLY SUBMITTED,

TROY KING (KIN047)
ATTORNEY GENERAL

SHARON FICQUETTE (FIC001)
CHIEF LEGAL COUNSEL

**s/ James E. Long**
James E. Long - LON016
Deputy Attorney General

State of Alabama
Department of Human Resources
P.O. Box 304000
Montgomery, Alabama 36130-4000
Phone: (334) 242-9330
Fax: (334) 242-0689

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing **DHR'S SUPPLEMENTAL BRIEF ON IMMUNITY ISSUES** on the following by placing a copy thereof, addressed as indicated below, in United States Mail, First Class postage prepaid, on this the 29th day of May 2007.

>Hon. Kathryn Dickey
>Attorney at Law
>322 Alabama St.
>Montgomery, AL  36104


>Hon. Jamie Spears-Turk
>Attorney at Law
>2735 Office Park Cir.
>Montgomery, AL  36116


  _s/ James E. Long_
James E. Long – LON 016
Deputy Attorney General

State of Alabama
Department of Human Resources
P.O. Box 304000
Montgomery, Alabama  36130-4000
Phone:  (334) 242-9330
Fax:  (334) 242-0689

ATTORNEY FOR DEFENDANT ALABAMA
DEPARTMENT OF HUMAN RESOURCES