IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| CAMELLIA THERAPEUTIC<br>FOSTER AGENCY, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>THE ALABAMA DEPARTMENT<br>OF HUMAN RESOURCES,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>2:06cv735-MHT<br>(WO) |

OPINION

Plaintiff Camellia Therapeutic Foster Care Agency, LLC, a private agency, brings this lawsuit against defendant Alabama Department of Human Resources pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., for racial discrimination in the awarding of foster-care contracts to private agencies. Camellia also asserts a violation of its right to procedural due process under the Fourteenth Amendment as well as state claims of interference with an existing lawful business and interference with contractual relations. Jurisdiction over Camellia's federal claims

is proper under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights); jurisdiction over its state claims is proper under 28 U.S.C. § 1367 (supplemental jurisdiction).

This case is currently before the court on the department's motion for summary judgment.[1]   Summary judgment will be entered in favor of the department and against Camellia.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

1.   The department actually filed a motion to dismiss and an alternative motion for summary judgment.  Because the parties have submitted materials outside the pleadings and the court has considered such materials, the court is  considering only the department's motion for summary judgment.  See Concordia v. Bendekovic, 693 F.2d 1073, 1075 (11th Cir. 1982); Kachler v. Taylor, 849 F.Supp. 1503, 1507 n. 3 (M.D. Ala. 1994) (Thompson, J.). The dismissal motion will be denied as moot.

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, at which point the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-

3

moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).


## II.  FACTUAL BACKGROUND

Camellia began accepting foster children in 2002. Joseph Appiah, who is of African descent and who is the private agency's chair and chief executive officer, recruited and trained foster-care parents and confirmed that all foster parents were licensed.

In May 2004, the Human Resources Department's Resource Development Director asked Appiah to attend a meeting in his office.  The director advised Appiah that his private agency was growing too fast and that he was concerned that not all of Camellia's parents were licensed; the director also informed Appiah that foster parents were coming to Camellia because it paid more money than the State required.  Appiah denied the two allegations.

4

Between May and June 2004, 30 children were removed from foster homes under the supervision of Camellia. In July 2004, Appiah received a letter from the Commissioner of the Department of Human Resources, stating that there were foster parents within his private agency that had not been cleared by the Federal Bureau of Investigation (FBI) or the Alabama Bureau of Investigation (ABI). Appiah denied this allegation and submitted copies of all documentation proving that his foster parents had been cleared by the FBI and ABI and approved by the department.

In August 2004, the department sent staff to Camellia's offices to audit its records. After a thorough check of all the records, the department determined that Camellia was in full compliance with all requirements. Nonetheless, the department continued to conduct numerous spontaneous audits and took over the responsibility of completing intake evaluations on all children entering Camellia.

5

In February 2005, the department issued requests for proposals (RFPs) to Camellia and other private foster-care agencies. An RFP is an invitation for qualified vendors to submit a response or to offer their services to the state based on the requirements of the document. Appiah submitted a response in a timely manner on behalf of Camellia.

Five evaluators individually scored at least 13 RFPs over a two-day period. The scores were averaged for a final score that was then given to each private agency that had submitted a proposal. An agency whose proposal scored below 800 would not be awarded a contract.

Camellia scored 753.3 and did not receive any contracts from the department. The scores Camellia received from the five evaluators varied widely: 932.5, 887.5, 769, 682.5, and 495. The lowest score, 495, was given by Joyce Wilson.

6

Seeraj, the only other African-American owned agency
to submit an RFP proposal,[2] received a final score of
854.5 and was awarded contracts from the department.[3]

In 2006, Appiah submitted two additional RFP
proposals to the department, and Camellia was again
denied contracts because of its low score.  Specifically,
Appiah responded to an RFP for Foster Care Recruitment
Services in Mobile and Jefferson Counties.  Camellia
alleges that it was the only private agency that had the
facility and staff in these counties to offer foster-care
and therapeutic services.  Nonetheless, the department
offered one of the contracts to another agency that
allegedly had no staff to perform the services, and it
cancelled the second contract offer.  As a result of the

───────────────

    2.  Camellia asserts, on the basis of Appiah's
understanding without any additional evidence, that the
Department of Human Resources did not want to award a
contract  to Seeraj, but did so after members of the
"NAACP/Black Caucus" intervened.  See Brief in Opposition
to the Summary Judgment Motion at 13 (doc. no. 40).

    3.  Notice of Information Requested at Pretrial
Conference (Doc. No. 46).

contract denials, Camellia was forced to close all but one of its offices and alleges that it has suffered financially.

### III.  DISCUSSION

#### A.  Eleventh Amendment Sovereign Immunity

The Alabama Department of Human Resources contends that the claim against it under Title VI must be dismissed because it is immune from suit pursuant to the Eleventh Amendment to the United States Constitution. That amendment prevents a federal court from exercising jurisdiction over a lawsuit against a State and its agencies, unless that State either has consented to be sued or has waived its immunity from suit.  <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 98-100 (1984).  According to federal statute,

> "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of ... title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq]., or the

8

provisions of any other Federal statute
prohibiting discrimination by recipients
of Federal financial assistance."

42 U.S.C. § 2000d-7; see also Garrett v. Univ. of Alabama

at Birmingham Bd. of Trustees, 344 F.3d 1288, 1290-91

(11th Cir. 2003).  The Eleventh Circuit Court of Appeals

has interpreted this statute to manifest an "unmistakable

intent to condition federal funds [under Title VI] on a

state's waiver of sovereign immunity."  Sandoval v.

Hagan, 197 F.3d 484, 493 (11th Cir. 1999), overruled on

other grounds, Alexander v. Sandoval, 532 U.S. 275

(2001).  Therefore, the department, by receiving Title VI

federal funds, has waived its sovereign immunity under

the Eleventh Amendment.


B.  Title VI

The Department of Human Resources next contends that

it is entitled to summary judgment on Camellia's Title VI

claim because the foster agency has failed to produce

sufficient evidence of intentional discrimination to

9

survive summary judgment.  Camellia responds that it need only show that the department's conduct had an unjustified discriminatory effect under Title VI.

Title VI has two main parts.  First, § 601 states that no person shall, "'on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity' covered by Title VI." Sandoval, 532 U.S. at 278 (quoting 42 U.S.C. § 2000d). Private individuals may sue to enforce § 601; however, the provision prohibits only intentional discrimination. Id. at 279-80.

Second, § 602 "authorizes federal agencies 'to effectuate the provisions of § 601 ... by issuing rules, regulations, or orders of general applicability.'"  Id. at 278 (quoting 42 U.S.C. § 2000d).  This provision "proscribe[s] activities that have a disparate impact on racial groups."  Id. at 281.  However, there is no private right of action to enforce § 602.  Id. at 293.

Camellia, as a private actor, can sue to enforce only § 601, which, as stated, requires proof of intentional discrimination. Because Camellia seeks to produce circumstantial evidence of intentional discrimination, this court will address its Title VI claim under the familiar McConnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Brown v. American Honda Motor Co., 939 F.2d 946, 958-59 (11th Cir. 1991).

Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802; Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1358 (11th Cir. 1999). If the plaintiff establishes a prima-facie case, the burden then shifts to the defendant to rebut the presumption by articulating legitimate, non-discriminatory reasons for its action. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). The

11

defendant has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reasons advanced. <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253-55, 258 (1981); <u>McDonnell Douglas</u>, 411 U.S. at 802.

Once the defendant satisfies this burden of production, the presumption of discrimination falls away and the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing a prima-facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the defendant were not the real reasons for the adverse decision. <u>Chapman</u>, 229 F.3d at 1024. The plaintiff may meet this burden by persuading the court that a discriminatory reason more than likely motivated the defendant or by demonstrating that the proffered reason for the adverse decision is not worthy of belief. <u>Burdine</u>, 450 U.S. at 256.

**PRIMA-FACIE CASE**:  Camellia may establish a prima-facie case of discrimination in the awarding of foster-care contracts by showing that (1) it is within the protected class; (2) it was qualified to receive a contract; (3) its proposal for a contract was rejected; and (4) the department awarded contracts to non-members of the class with similar qualifications.  See Oti Kaga, Inc. v. South Dakota Housing Dev. Auth., 342 F.3d 871, 882-83 (8th Cir. 2003).  The court will assume that Camellia has established a prima-facie case.

**LEGITIMATE, NON-DISCRIMINATORY REASON**:  Since the court assumes that Camellia has established a prima-facie case, the burden of production shifts to the Department of Human Resources to rebut the presumption by articulating a legitimate, non-discriminatory reason for its failure to award a contract to Camellia.

The department explains that the reason Camellia was not awarded a contract was because it received an RFP score of 753.3, which was below the 800 required to be

13

awarded a foster-care contract. The department has met its burden of production.

   PRETEXT: At the final stage of the McConnell Douglas framework, the burden shifts back to Camellia which must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reason given by the Human Resources Department is not its true reason but is a pretext for discrimination. See Vessels v. Atlanta Indep. School Sys., 408 F.3d 763, 771 (11th Cir. 2005).

   Camellia contends that the department's reason for not awarding it a contract is pretextual because the scoring process was tainted by the discrimination of one particular scorer, Joyce Wilson. As shown, Wilson gave Camellia a score of 495, which was significantly lower than those of the other four evaluators, who gave Camellia scores of 682.5, 769, 887.5 and 932.5. The department contends that Wilson was a universally hard scorer, but that is not borne out in the data; of the 14

14

agencies she scored, Camellia's score was the lowest.  In fact, Wilson gave two other agencies scores below the qualifying score of 800, Ability Plus, Inc., which received a score of 545, and Families in Transition, which received a score of 782.5.    However, more significantly, the data also show that the two other private agencies Wilson gave her below-800 scores to, Ability Plus and Families in Transition, were both white-owned.  In addition, Wilson gave the only other African-American owned agency, Seeraj, a score above 800, that is, 813.75.  These scoring data, therefore, do support a finding of racial discrimination.

Finally, and perhaps more importantly, Camellia has presented no evidence demonstrating that Wilson knew the race of the owners of the individual agencies at the time she scored the RFPs; nor has Camellia presented evidence from which a factfinder could assess and reasonably conclude that a white-owned private agency comparable in

<u>all relevant respects to Camellia</u> was rated differently by Wilson.

The evidence is, thus, not sufficient to raise a genuine issue of material fact that race discrimination more than likely motivated the department in the awarding of foster-care contracts or that the department's articulated reason is unworthy of belief. The Alabama Department of Human Resources is therefore entitled to summary judgment on Camellia's Title VI claim.

## C. Procedural Due Process

The Alabama Department of Human Resources next contends that Camellia has failed to present sufficient evidence to survive summary judgment on its procedural due-process claim. Camellia asserts, without explanation or citation, that it was entitled to a hearing pursuant to Title VI. Because there is no right to a hearing in the express language of Title VI, the procedural due-

16

process claim must be addressed under the Fourteenth Amendment.

Deprivations of interests in life, liberty and property are subject to the requirements of procedural due process. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). To prove a denial of procedural due process, Camellia must establish: "(1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying that deprivation." Bank of Jackson County v. Cherry, 980 F.2d 1354, 1357 (11th Cir. 1992). The sole issue is whether Camellia had a property interest in being awarded the government contract.

"To have a property interest in a benefit, [a private agency] ... must have more than an abstract need or desire for it. [It] must have more than a unilateral expectation of it. [It] must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577.

17

Such property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Id.

The Eleventh Circuit has not specifically addressed whether a bidder has a property interest in a government contract.[4]  However, the Sixth Circuit Court of Appeals has established a standard for determining whether a bidder has a constitutionally protected property interest in a publicly bid contract that this court finds persuasive.  The appellate court explained that constitutionally protected property in a government contract can be demonstrated in two ways.  "A bidder can either show that it actually was awarded the contract and then deprived of it, or that, under state law, the

_____

4.  The Eleventh Circuit has only cited with approval the holding of the Federal Circuit Court of Appeals that a contractor has no property interest in government contracts.  Bank of Jackson County, 980 F.2d at 1357 (citing ATL, Inc. v. United States, 736 F.2d 677, 683 (Fed. Cir. 1984)).

18

[government entity] had limited discretion, which it abused, in awarding the contract." <u>Club Italia Soccer & Sports Org., Inc. v. Charter Township of Shelby, Mich.</u>, 470 F.3d 286, 297 (6th Cir. 2006). In is clear from the record that Camellia is unable to make either of the requisite showings. Camellia does not argue that it was actually awarded a contract; in fact, it argues the contrary. Further, the only limitation on the Human Resources Department's awarding of contracts was that private foster-care agencies receive an RFP score of above 800. There is no evidence in the record that the department abused this discretion by awarding contracts to private agencies that received scores below 800. Therefore, the department is entitled to summary judgment on Camellia's procedural due-process claim.

## D.  State Claims

<u>SUPPLEMENTAL JURISDICTION</u>: Camellia raises two state claims: interference with an existing lawful business and

interference with contract relations.  The Department of Human Resources contends that this court should decline to exercise supplemental jurisdiction over these claims.

A district court has discretion to decline supplemental jurisdiction over a claim when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Factors to be taken into account include "the values of judicial economy, convenience, fairness, and comity."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).  Courts are strongly encouraged to dismiss state claims when the federal claims have been dismissed prior to trial.  See id. ("federal court[s] should decline the exercise of [supplemental] jurisdiction by dismissing the case without prejudice" when the federal law claims have been dismissed prior to trial).

This court has dismissed, prior to trial, all the federal claims for which it had original jurisdiction. However, this court will take into consideration whether

the state claims can be brought in state court. Ordinarily, the period of limitations for dismissed state claims filed in federal court pursuant to 28 U.S.C. § 1367 is "tolled while the claim is pending and for a period of 30 days after it is dismissed unless state law provides for a longer tolling period." 28 U.S.C. § 1367(d). However, the Supreme Court has held that the tolling provision of § 1367(d) is unconstitutional when applied "to claims against nonconsenting state defendants." Raygor v. Regents of Univ. of Minnesota, 533 U.S. 534, 542 (2002). Because the Department of Human Resources is a nonconsenting state defendant, § 1367(d)'s tolling provision does not apply to it, and this court must turn to, and rely on only, state law.

According to Alabama law, Camellia had two years from the date of the injury to file its state claims in state court. See 1975 Ala. Code § 6-2-38(l) ("All actions for injury to the person or rights of another not arising from contract and not specifically enumerated in this

21

section must be brought within two years."). Because the injury arose in this action on or about May 12, 2005, when the department published on its website a "Notice of Intent to Award Contracts" and disclosed that Camellia scored below the minimum of 800 for the awarding of foster-care contracts, Camellia's state claims are barred under state law. Therefore, if this court were to dismiss Camellia's state claims, Camellia would not be able to file the claims in state court because the claims would not have been tolled by § 1367(d) and therefore would be late. Thus, out of considerations of fairness to the parties, this court will exercise supplemental jurisdiction over Camellia's state claims.

**INTERFERENCE WITH BUSINESS OR CONTRACTUAL RELATIONS**: Camellia contends that the Department of Human Resources intentionally interfered with its lawful business and contractual relations by discriminating against it in the awarding of foster-care contracts. "The tort of intentional interference with business or contractual

22

relations requires: (1) the existence of a contract or business relation; (2) [d]efendant's knowledge of the contract or business relation; (3) [i]ntentional interference by the defendant with the contract or business relation; (4) [a]bsence of justification for the defendant's interference; and (5) [d]amage to the plaintiff as a result of defendant's interference." Folmar & Assocs. LLP v. Holberg, 776 So.2d 112, 115 (Ala. 2000) (citation omitted).    However, "a party to a contract or a business relationship cannot be liable for tortious interference with that contract or business relationship."  Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1154 (Ala. 2003).  Since the department, as Camellia would have it, was a party to the contract and business relationship with it, the department cannot be held liable for tortious interference.

Therefore, this court holds that the Human Resources Department is entitled to summary judgment on the claims

of interference with a lawful existing business and interference with contractual relations.

## IV. CONCLUSION

For the foregoing reasons, the Alabama Department of Human Resources's motion for summary judgment will be granted on Camellia's federal and state claims.

An appropriate judgment will be entered.

DONE, this the 5th day of November, 2007.

_____ /s/ Myron H. Thompson _____
UNITED STATES DISTRICT JUDGE